## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **AURELIA WILLIAMS,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CASE NO: 14-03118** |
| | ) | |
| **RESURGENT CAPITAL SERVICES, LP,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

### DEFENDANT RESURGENT CAPITAL SERVICES, LP'S MEMORANDUM BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S ADVERSARY PROCEEDING AS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

COMES NOW, Defendant Resurgent Capital Services, LP (hereinafter "Resurgent" or "Defendant"), by and through counsel of record, and submits this Memorandum Brief in support of its Motion to Dismiss Plaintiff Aurelia Williams' Adversary Proceeding based on an alleged Fair Debt Collection Practices Act ("FDCPA") violation, as it is barred by the applicable statute of limitations. As support, Defendant shows unto this Court as follows:

### SUMMARY OF THE ARGUMENT

Plaintiff filed this adversary proceeding ("AP") against Defendant for alleged violations of the FDCPA arising from Defendant filing a proof of claim ("POC") on a time-barred debt. Plaintiff filed for Chapter 13 bankruptcy on April 22, 2010. Defendants filed the subject POC on May 6, 2010. Plaintiff did not file this AP against Defendants until October 7, 2014. The FDCPA requires causes of actions based on violations of the FDCPA to be brought within one year from the date of the violation. Given Plaintiff did not file her AP until over four years after the alleged violation (i.e., the filing of the POC), her FDCPA claim is time-barred and due to be

dismissed as a matter of law. Despite Plaintiff's likely contentions otherwise, as will be explained below, there is nothing excepting her AP from the one-year statute of limitations.

**STATEMENT OF FACTS**

1.  The Plaintiff initiated the underlying Chapter 13 bankruptcy proceeding (Case No. 10-31037) on April 22, 2010. (Plaintiff's Complaint, ¶ 1).

2.  In said bankruptcy proceeding, Plaintiff listed Merrick Bank as a creditor in the 2010 schedules. (Plaintiff's Complaint, ¶ 12).

3.  Subsequent to Plaintiff filing for bankruptcy, Resurgent, on behalf of Merrick Bank, filed an unsecured proof of claim (Claim #3) on May 6, 2010. (Plaintiff's Complaint, ¶ 14).

4.  On October 7, 2014, Plaintiff filed her AP, which, in pertinent part, alleged violations of the FDCPA based on Defendant filing a POC on a time-barred debt. (Plaintiff's Complaint).

**LEGAL ARGUMENT**

I.  **PLAINTIFF'S ADVERSARY PROCEEDING IS DUE TO BE DISMISSED AS TIME-BARRED.**

   A.  **Plaintiff Filed Hers Adversary Proceeding More Than One Year After The Alleged FDCPA Violation.**

A plaintiff must bring an action for an alleged FDCPA violation "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995) ("Section 1692k(d) provides that actions to enforce liability created by the FDCPA must be brought 'within one year from the date on which the violation occurs.'"). Although the Eleventh Circuit has not addressed the issue of when the statute of limitations begins to run for an alleged FDCPA violation based on the filing of a proof of claim in bankruptcy, courts that have considered the issue find the statute of limitations begins to run

when the proof of claim is filed. *See, e.g.*, *In re Simmerman*, 463 B.R. 47, 65 (Bankr. S.D. Ohio 2011) ("In the Simmermans' complaint, the most recent act alleged to violate the FDCPA is the filing of an amended proof of claim in the current bankruptcy case . . . . Because the allegations in the Simmermans' complaint do not demonstrate that Ocwen engaged in improper conduct within the one year window of the FDCPA's statute of limitations, the court concludes that the FDCPA cause of action is time-barred and, therefore, dismissed."); *see also Kline v. Mortgage Electronic Sec. Systems*, 659 F.Supp.2d 940, 952 (S.D. Ohio 2009) ("Applying *Purnell* to the present litigation, this Court concludes that the Rosses' claim under the FDCPA against LS & R, predicated upon the proof of claim filed in their case under Chapter 13, must be dismissed as barred by the statute of limitations, since the proof of claim was filed more than one year before this litigation was initiated."); *In re Rice-Etherly*, 336 B.R. 308, 313 (Bankr. E.D. Mich. 2006) ("The Proof of Claim at issue in this case was filed on February 28, 2002. Plaintiffs' adversary complaint was filed on September 22, 2005, more than three years after the Proof of Claim was filed and well outside the one year window provided by the statute.").

In the present case, it is clear that Plaintiff did not timely file her FDCPA claim against Defendant. Defendant filed the POC on May 6, 2010. Therefore, Plaintiff was required to file the instant AP by May 6, 2011. *See* 15 U.S.C. § 1692k(d); *Maloy*, 64 F.3d at 608; *In re Simmerman*, 463 B.R. at 65; *Kline*, 659 F.Supp.2d at 952; *In re Rice-Etherly*, 336 B.R. at 313. Plaintiff did not file this AP until October 7, 2014 – more than 4 years after the alleged violation and 3 years after the statute of limitations expired. Because Plaintiff did not file her AP within the applicable statute of limitations, her FDCPA claim against Defendant is due to be dismissed as a matter of law.

Plaintiff has previously asserted that this Court is not bound by the cases cited above that hold an FDCPA claim based on the filing of a POC begins to run when the POC is filed. While Plaintiff is correct as to this general assertion, the cases cited above are persuasive as they are in-line with the governing statute (15 U.S.C. § 1692k(d)) and Eleventh Circuit binding precedent. Under § 1692k(d), the applicable one year statute of limitations begins to run *when the violation occurs*. Here, the alleged violation is the filing of the POC. Therefore, under a plain reading of the statute, the statute of limitations began to run when the POC was filed.

Additionally, the analysis and holding in *Maloy* is instructive. As addressed more thoroughly in the Part I.B.iii.a, below, in *Maloy*, the Eleventh Circuit held that the one year statute of limitations began to run on the date an allegedly violating letter was put in the mail, not on the date the letter was received. 64 F.3d at 608. The Eleventh Circuit reasoned that the date of mailing began the running of the statute of limitations "because that was the debt collector's last opportunity to comply with the FDCPA" and "using the date of mailing was a better and more practical approach because it provided a date that was easy to determine, ascertainable by both parties, and easily applied." *Id.*

Like in *Maloy*, in this case, the date the POC was filed was the last opportunity to comply with the FDCPA and provides a clear, ascertainable date for both parties. Thus, like the decisions in *In re Simmerman*, *Kline*, and *In re Rice-Etherly*, *Maloy* instructs that the one year statute of limitations began to run on the date the POC was filed. Plaintiff's mere contention that this Court is not bound by other courts' precedents is misguided and avoids the real issue of when the statute of limitations begins to run. As detailed above, those other courts that have decided the issue were correct in their holdings. Both the applicable statute and Eleventh Circuit precedent shows that the running of the statute of limitations should begin the day the POC is

filed. Accordingly, because Plaintiff's AP was filed more than one year after the POC was filed, it is barred by the FDCPA's statute of limitations and is due to be dismissed as a matter of law.

The facts and the law in this regard are both simple and uncontested. For Plaintiff's claim to survive this motion, Plaintiff must convince this Honorable Court of some exception to this rule. We know what exceptions Plaintiff will raise: other plaintiffs in the same position as Plaintiff, sometimes represented by the same counsel, have argued theories ranging from relation back to recoupment in efforts to salvage time-barred claims (somewhat ironically, given the basis of their claims to begin with is the alleged unfairness of pursuing a time-barred claim). Because we know what Plaintiff will contend, Defendant will address the reasons Plaintiff's arguments are ultimately unavailing, as an understanding of the flaws with Plaintiff's position will put her eventual opposition brief into better context.

### B. Nothing Exempts Plaintiff's Adversary Proceeding From The FDCPA's One-Year Statute Of Limitations.

The three most typical, yet incorrect, assertions as to why Plaintiff's AP would not be barred by the FDCPA's one-year statute of limitations are: relation-back of a compulsory counterclaim, recoupment, and continuous violations. However, as will be addressed below, none of Plaintiff's possible arguments prevail and his FDCPA claim remains dead on arrival.

### i. Plaintiff's adversary proceeding is not a compulsory counterclaim.

Defendants expect Plaintiff will argue her AP is a compulsory counterclaim to Defendants' POC, such that it would relate back to the filing of the POC and, therefore, not be subject to the FDCPA's statute of limitations. Here is how her argument goes: the POC is essentially the same as a complaint and that, under Bankruptcy rules, her AP is the same as a counterclaim to Defendants' POC-complaint. From this premise she will assert her counterclaim is compulsory because it arises out of the POC and, therefore, arises out of the same transaction

or occurrence as the POC.[1]  Plaintiff will then argue that her "compulsory counterclaim" is not subject to the one year statute of limitations, because statute of limitations for compulsory counterclaims are tolled and the compulsory counterclaim relates back to the filing of the complaint under Federal law.  Thus, arguing his compulsory counterclaim relates back to the filing of the POC, Plaintiff will say her FDCPA claim was timely filed.

However, Plaintiff's assertions are wrong. Even if Defendant's POC is considered a complaint to which Plaintiff could file a counterclaim, Plaintiff's AP is _not_ a compulsory counterclaim, as it does not arise out of the same transaction or occurrence as Defendant's POC. However, even if Plaintiff's AP <u>were</u> a compulsory counterclaim, it is still time-barred because the statute of limitations began to run at the time the POC was filed and the AP does not relate back to when the POC was filed.

> a.   **Plaintiff's adversary proceeding is not a compulsory counterclaim because it does not arise out of the same transaction or occurrence.**

The Federal Rules of Civil Procedure define a compulsory counterclaim as follows:

> (a) Compulsory Counterclaim.
> (1) *In General.* A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13. The Eleventh Circuit has adopted the "logical relationship" test for determining whether a claim arises out of the same transaction or occurrence. *Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998).  "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the

---

[1]  It is critical to Plaintiff's contention that her AP be a <u>compulsory</u> counterclaim, not a permissive one.

aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (quotation omitted). Thus, for Plaintiff to begin her argument about tolling the statute, she must first convince this court her AP arises out of the same facts as the 'complaint', i.e., arises from the same facts as the proof of claim.

She cannot. Under the logical relationship test, Plaintiff's FDCPA claim does not arise out of the same transaction or occurrence as the claim upon which the POC was filed. The POC was filed because Plaintiff incurred a debt that she failed to pay. Thus, the POC arose out of an unmet obligation between Plaintiff and her creditor, and Plaintiff's failure to repay that debt in accordance with the terms of the agreement. In contrast, Plaintiff's adversary proceeding asserting an FDCPA claim arose from Defendant's allegedly illegal tactics while collecting the debt. This is no mean distinction.

The case *Azar v. Hayter*, 874 F.Supp. 1314 (N.D. Fla. 1995) ("*Azar I*"), *affirmed Azar v. Hayter*, 66 F.3d 342 (11th Cir. 1995) ("*Azar II*"), is instructive on this issue. In *Azar*, the plaintiff filed a lawsuit against the defendants alleging FDCPA violations based on the defendants' failures to comply with the requirements for dunning letters. 874 F.Supp. at 1316-17. Importantly, before plaintiff filed suit for the alleged FDCPA violations, the defendants had previously sued the plaintiff to collect the debt at issue, and the plaintiff failed to raise his FDCPA claim as a counterclaim. *Id.* Thus, when plaintiff filed an independent suit for alleged FDCPA violations arising from the collection of the debt at issue in the first suit, the defendants argued plaintiff's FDCPA claim was barred by *res judicata* because it was a compulsory counterclaim to their original cause of action to collect the past due debt. *Id.* at 1317. However, the district court disagreed, explaining:

Hayter's argument that Plaintiff is barred by *res judicata* is unpersuasive. The case cited by Defendant Hayter stands for the proposition that failure to assert a compulsory counterclaim, which is a claim against an opposing party arising out of the same transaction or occurrence which is the subject of the opposing party's claim, results in waiver or estoppel. **Plaintiff's FDCPA claim has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt, and thus was not a compulsory counterclaim under state law in the action to collect the debt.**

*Id.* Accordingly, the plaintiff could still assert her FDCPA claim in a different lawsuit even though she did not raise it as a defense to the debt itself. It was a different claim arising from a set of facts isolated from those at issue in the suit to enforce the debt.

The Eleventh Circuit correctly affirmed the district court's decision. *Azar II*, 66 F.3d at 342. An FDCPA claim (valid or not) would not serve as a defense to the validity of the debt. A suit to collect a debt has as its basis the facts and circumstances underlying the creation of the obligation. If, for example, a mortgage lender did not comply with TILA in making the loan, then a suit to collect the mortgage would have, as a compulsory counter claim, a TILA charge. Any claim based on an illegality in the creation of the mortgage would plainly arise from the same circumstances as a suit to enforce the mortgage. It would be a defense to the debt. But an FDCPA claim arising from the collection of a debt has no bearing on whether the debt itself is ultimately valid or not. FDCPA claims are not compulsory counterclaims.

For this reason, other courts have come to the same conclusion and routinely find FDCPA claims are not compulsory to lawsuits attempting to recover the debt. In *Roban v. Marinosci Law Group*, the plaintiff filed a lawsuit alleging the defendants violated the FDCPA by filing a time-barred foreclosure action. ___ F.Supp. 2d ___, 2014 WL 3738628, *1 (S.D. Fla. 2014). The defendants argued that the plaintiff's FDCPA claim should have been filed as a

compulsory counterclaim in the foreclosure action, which had been dismissed as barred by the applicable statute of limitations. *Id.* at *1, 3. The court held:

> The foreclosure case was premised on Roban's alleged failure to pay the mortgage. This action is premised on Deutsche Bank and Marinosci Law's actions in connection with filing the lawsuit. Roban's FDCPA claims are separate and distinct from the foreclosure lawsuit . . . .
>
> . . .
>
> A claim is a compulsory counterclaim to a previous lawsuit if it is logically related to the prior action, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant. As the Court has already explained, Roban's FDCPA claim is not logically related to the state court foreclosure action. *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981) ("[T]he suit on debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts.").

*Id.* at *3.

In *Peterson v. United Accounts, Inc.*, the defendant had filed a state court action to collect a debt against the plaintiff. 638 F.2d 1134, 1135 (8th Cir. 1981). The plaintiff then filed a federal FDCPA lawsuit alleging the defendant had failed to send proper notice and used unfair means to collect an amount not permitted by law. *Id.* The district court dismissed the federal lawsuit because it found the plaintiff's FDCPA claim to be compulsory to the defendant's state court action to collect the debt. On appeal, the Eighth Circuit reversed the district court, holding the FDCPA claim was not compulsory and explaining:

> In our view, the goals of Rule 13 and the purpose of the FDCPA can best be effectuated by holding the counterclaim involved in this case permissive, rendering it cognizable in either the state or federal court.
>
> In the instant case, the circumstances giving rise to the original debt are separate and distinct from the collection activities undertaken by United Accounts, Inc. While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relation to one another. Although there is some overlap of issues raised in both cases as a

result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts.

*Id.* at 1137.   Again we see courts are not confused by the fact that debt collection activity must necessarily follow the creation of (and failure to pay) a debt.   Of course the debt is the starting point for all actions that follow.   The governing question is whether the suit to enforce the FDCPA arises from the same facts from which the debt itself arose.   It does not.

For these reasons, not only is an FDCPA claim not a compulsory counterclaim in a debt suit, but a suit to enforce the debt is not a compulsory counterclaim to an FDCPA suit.   In *Hunt v. 21st Mortgage Corp.*, the plaintiff filed a complaint alleging in part an FDCPA claim arising out of the defendant's alleged harassment of plaintiff in its attempt to collect a debt.   2012 WL 3903783, *1 (N.D. Ala. 2012).   The defendant then filed a counterclaim, alleging breach of contract based on the plaintiff's alleged failure to make payments on an installment contract for the purchase of a manufactured home.   *Id.* at *2.   In deciding whether it had supplemental jurisdiction over the defendant's state law counterclaim, the court assessed whether the counterclaim was permissive or compulsory.   *Id.* at *3.   The court held the breach of contract claim was a permissive, and not compulsory, counterclaim to the plaintiff's FDCPA claim, explaining:

> Defendant's state law breach of contract counterclaim does not bear a logical relationship to Plaintiff's FDCPA claim.   In some technical sense, the two claims may arise from the same underlying loan transaction and some overlap of issues may exist.   For example, but for Plaintiff's debt, presumably Defendant would not have attempted to collect.   Nevertheless, the manner in which defendant has attempted to collect the debt does not concern whether a valid contract exists between the parties and, if so, any obligations created by it.   Thus, the court has no trouble finding that Defendant's counterclaim is permissive, not compulsory.

*Id.* at *3-4.

As detailed above, Plaintiff's FDCPA claim "concerns the method of collecting the debt. It does not arise out of the transaction creating the debt." *Azar I*, 874 F.Supp. 1317. The POC is premised on Plaintiff's failure to pay her debt, whereas "[t]his action is premised on [Defendant's] actions in connection with filing the [POC]. [Plaintiff's] FDCPA claims are separate and distinct from the [POC]." *See Roban*, ___ F.Supp. 2d ___, 2014 WL 3738628 at *3. Like above, some overlap exists: Without the debt owed to Merrick Bank, there never would have been a Proof of Claim to file. But, also like above, "the manner in which the Defendant has attempted to collect the debt [the issue in the adversarial proceeding] does not concern whether a valid contract exists between the parties [the issue in the Proof of Claim]." *See Peterson*, 638 F.2d at 1137; *Hunt*, 2012 WL 3903783 at *3-4. Given Plaintiff's FDCPA claim does not bear a logical relationship to the POC, Plaintiff's FDCPA claim does not arise out of the same transaction or occurrence. Thus, it is not a compulsory counterclaim and cannot be argued to 'relate back' to the filing of the POC.

There is a good reason courts keep ruling this way. Plaintiff's FDCPA claim could not arise out of the <u>same</u> transaction or occurrence as the POC because the FDCPA claim is based <u>on</u> the filing of the POC. The POC necessarily must arise out of some other transaction or occurrence, because it cannot be based on its own filing; it must be – and is – based on some prior transaction or occurrence creating a debt. Put differently, a compulsory counterclaim would need to exist in fact and law <u>before</u> the POC was filed, not <u>because</u> the POC was filed.

Defendant expects Plaintiff to claim that *Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F.2d 1357 (5th Cir. 1979), and its progeny, is binding (or at least persuasive) precedent that her FDCPA claim is a compulsory counterclaim. The problem is Plaintiff wrongly conflates an FDCPA claim with a TILA claim. In *Plant*, the plaintiff executed a note in

Case 14-03118   Doc 11   Filed 02/17/15   Entered 02/17/15 12:53:38   Desc Main
Document      Page 11 of 28

favor of the defendant, but failed to make any payments on the note. *Id.* at 1359. The plaintiff subsequently filed a lawsuit claiming a violation of the Truth in Lending Act ("TILA"). *Id.* The defendant asserted a state-law counterclaim to collect on the note for the unpaid balance, which the district court used to offset the plaintiff's award after finding in the plaintiff's favor on her TILA claim. *Id.* On appeal, the plaintiff argued the district court did not have jurisdiction over the state-law counterclaim. *Id.* To resolve this issue, the Fifth Circuit had to decide whether the counterclaim was compulsory to the TILA claim because, if it was, the court would have had jurisdiction. *Id.* The Fifth Circuit, applying the logical relationship test, held:

> Applying the logical relationship test literally to the counterclaim in this case clearly suggests its compulsory character because a single aggregate of operative facts, the loan transaction, gave rise to both plaintiff's and defendant's claim.

*Id.* at 1361. The court adopted the reasoning from Alabama, Louisiana, Texas, and Georgia courts, all of which relied on the fact the claim and counterclaim both arose out of the same transaction – the creation of the debt. *Id.* at 1363-64.

While the Fifth Circuit's holding with regards to a TILA counterclaim makes sense, the same reasoning does not apply in the FDCPA context. A TILA violation occurs when the creditor does not make proper disclosures at the time the mortgage is created. In contrast, a FDCPA violation arises from activity by a debt collector only after a debt was formed, the debtor stopped paying, the account entered default, the account was charged off, and the account was sold to a third party.[2] If there were illegalities in the creation of your mortgage (which is what a TILA claim is based on) then you have a defense to the suit filed to enforce the mortgage. But if somebody harassingly collected the mortgage, it would serve as no basis to deny responsibility for the underlying debt, nor would it offset what you owed.

---

[2] As this court knows, a lender collecting its own debt is not subject to the FDCPA. Only third party debt collectors are.

Case 14-03118   Doc 11   Filed 02/17/15   Entered 02/17/15 12:53:38   Desc Main
Document    Page 12 of 28

Therefore, when Plaintiff files her responsive pleading, there will be no need to recite the same strand of TILA cases relied on in the past. Instead, Plaintiff will need to find cases that explain why the holdings in *Azar, Roban, Peterson, and Hunt* are wrong. There is Eleventh Circuit precedent standing for the proposition that an FDCPA claim is not a compulsory counterclaim to the debt itself. Plaintiff is asking this Honorable Court to change the law so her claim can proceed. Respectfully, Defendant contends the role of the court is to follow, not change, the law.

> **b.** **Plaintiff's adversary proceeding does not relate back to the filing of the POC.**

In an abundance of caution, should this Honorable Court decide the Eleventh Circuit precedent is wrongly decided and Plaintiff's claim is compulsory after all, it would still be time barred. Plaintiff will argue a compulsory counterclaim would relate back to the filing of the original complaint, but she would be too general with her understanding of the law. Counterclaims are governed by Fed.R.Civ.P. 13. Nothing in Rule 13 provides for relation back, and statutory construction instructs this Court not to read such a provision into the rule. Plaintiff's belief that a compulsory counterclaim would relate back is wrong.

Before looking at the text of the applicable procedural rules for counterclaims and relation back, it is important to remember some rules of statutory construction. Of particular relevance is one of the most basic rules of construction: when specific language is used in one section, but omitted from another section, it is presumed that inclusion in one section and exclusion in the other was done intentionally. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452, 122 S.Ct. 941, 951 (2002) ("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely

in the disparate inclusion or exclusion."). Why is this important? Because Federal Rule of Civil Procedure **13** governs cross-claims and counterclaims, both permissive and compulsory. Nowhere does Rule 13 provide that a cross-claim or any type of counterclaim relates back to the filing of the original complaint for statute of limitations purposes. *See* Fed.R.Civ.P. 13. Rather, it is Rule **15**, which governs amended and supplemental pleadings, and which provides the only situations in which relation back applies. In pertinent part, Rule 15 provides:

> (c) Relation Back of Amendments
> > (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> > > (A) the law that provides the applicable statute of limitations allows relation back;
> > > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading . . .

Fed.R.Civ.P. 15(c).

Because relation-back is not written into Rule 13, but was deliberately included in Rule 15, the rules of construction instruct that relation-back was <u>not intended to be included in Rule 13</u>. *See Barnhart*, 534 U.S. at 452, 122 S.Ct. at 951. While the Eleventh Circuit has not yet directly had to address whether Rule 13 allows relation back of a counterclaim or cross-claim, the Fifth and Sixth Circuits have both held that Rule 13 does not allow for relation-back. In *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, the Fifth Circuit was presented with the issue of whether a cross-claim related back to the filing of the original complaint and held that it did not. 20 F.3d 1362 (5th Cir. 1994). The Court explained:

> As the district court observed, "[**t**]**he necessary implication of the rule is that in order for an amended pleading to relate back for statute of limitations purposes, there must be a previous pleading to which the amendment dates back.**" It concluded that no such pleading existed. United Postal argues on appeal that the cross-claim related back to either HGIC's original complaint or to its April 18, 1989, amended answer and counterclaim (the "amended answer"). **The cross-claim filed by United Postal is, however, an "original" cross-claim**

**against a co-party, *not* an amendment to a previously filed pleading. Accordingly, it does not appear to be within the province of Rule 15(c). Furthermore, Rule 13(g) governing cross-claims does not permit relation back of a cross-claim seeking affirmative and independent relief to the original complaint.**

*Id.* at 1367 (bolding added).  Plaintiff has the same problem in this case.  Her AP is not an amended pleading; it has nothing to relate back to.  The federal rules do not allow a counterclaim to relate back.

In *Stoner v. Terranella*, the plaintiff sued two defendants – Terranella and Glenos – for injuries arising out of a motor vehicle accident.  372 F.2d 89, 90 (6th Cir. 1967).  Glenos filed a counterclaim, but Terranella did not.  *Id.*  Later, after the statute of limitations had run, Terranella moved to amend his answer and assert a counterclaim, but the district court overruled the motion with respect to his counterclaim for personal injuries because it was barred by the statute of limitations.  *Id.*  On appeal, Terranella argued that his amended counterclaim should have related back to the filing of the original pleading pursuant to Rule 15(c).  *Id.*  The Sixth Circuit disagreed with Terranella, holding his amended counterclaim fell under Rule 13(f), governing amendment of pleadings to include omitted counterclaims, and not Rule 15(c).  The Court explained:

> With respect to the scope of [Rule 13(f)], it is clear that it provides a remedy for setting up omitted counterclaims which is separate and apart from the remedy provided in Rule 15(a) dealing with pleading amendments in general.  While Rule 13(f) provides that an omitted counterclaim may be set up only by leave of court, under Rule 15 a pleading may be amended at any time within 20 days after it is served [if the pleading is one to which no responsive pleading is permitted (e.g., an answer only, without a counterclaim) * * *.'  Thus, the courts which have passed upon motions for leave to file amended pleadings embracing previously omitted counterclaims have generally considered only Rule 13(f), and not Rule 15.  **We conclude that the remedies provided by the two rules are mutually exclusive** in the sense that an amendment asserting a previously omitted counterclaim, such as was attempted in the instant case, is made pursuant to Rule 13(f) and not Rule 15(a).  **Consequently, since Rule 15(c) is applicable only to**

**amendments made pursuant to Rule 15(a), amendments made pursuant to Rule 13(f) do not relate back to the original pleadings.**

*Id.* at 91 (citations omitted).

As is evident in the Fifth and Sixth Circuit cases, for any claim to relate back to the filing of an original pleading, the claim must be brought under Rule 15. In the present case, Plaintiff can only hope to travel under Rule 13 as her adversarial proceeding is not an amendment to any pleading. Tellingly, Rule 13(f) has been abrogated since the above cases were published, but the advisory committee notes addressing why Rule 13(f) was abrogated confirms the Fifth and Sixth Circuits were correct in their holdings. The advisory committee explained:

> Rule 13(f) is deleted as largely redundant and potentially misleading. An amendment to add a counterclaim will be governed by Rule 15. Rule 15(a)(1) permits some amendments to be made as a matter of course or with the opposing party's written consent. When the court's leave is required, the reasons described in Rule 13(f) for permitting amendment of a pleading to add an omitted counterclaim sound different from the general amendment standard in Rule 15(a)(2), but seem to be administered – as they should be – according to the same standard directing that leave should be freely given when justice so requires. **The independent existence of Rule 13(f) has, however, created some uncertainty as to the availability of relation back of the amendment under Rule 15(c).** *See 6 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 2d, § 1430 (1990).* **Deletion of Rule 13(f) ensures that relation back is governed by the tests that apply to all other pleading amendments.**

Fed.R.Civ.P. 13, Advisory Committee Notes for the 2009 Amendments (emphasis added). Thus, as stated by the advisory committee, relation back is to be governed by the rules addressing <u>amendments of pleadings</u> – i.e., Rule 15(c). There is no question that Plaintiff's Adversary Proceeding does <u>not</u> fall under Rule 15(c), as Rule 15(c) applies only to amendments of pleadings and Plaintiff's FDCPA claim was not raised in an amendment. Accordingly, Plaintiff's FDCPA claim, even if construed to be a compulsory counterclaim, does not relate back to the filing of the POC and is still barred by the FDCPA's one-year statute of limitations.

16

Defendant anticipates Plaintiff will argue the Eleventh Circuit and other circuits have held a compulsory counterclaim does relate back to the filing of the complaint (i.e., POC). However, Plaintiff's reliance on these other cases would be misplaced. Plaintiff will likely cite to *Ferris v. Chrysler Credit Corp. (In re Ferris)*, 764 F.2d 1475 (11th Cir. 1985) for the proposition that a counterclaim to a claim filed by a creditor in a bankruptcy case relates back to the filing of the creditor's claim. However, *Ferris* is inapplicable to the present case. *Ferris* involved a counterclaim for a TILA violation and, once again, the difference between a TILA claim and an FDCPA claim is instructive. While a TILA counterclaim is compulsory, that fact is not why a TILA claim can be brought after the statute of limitations runs. Being a compulsory counterclaim does not save it. It is saved because TILA expressly provides a recoupment savings clause:

> This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e). There is no such savings clause in the FDCPA. Given *Ferris* relied on this savings clause in determining the counterclaim related back, the holding in *Ferris* is not helpful here. *See In re Gurganus*, 2015 WL 65089 (Bankr. N.D. Ala. 2015) (holding *Ferris* was not controlling on issue of whether FDCPA counterclaim related back to filing of POC because there is no savings clause in FDCPA, and dismissing case as time-barred by the FDCPA's one-year statute of limitations). Even if Plaintiff can convince this court to ignore the case law holding an FDCPA claim is not compulsory, it still won't matter: a compulsory counterclaim won't relate back anyway.

Next, Plaintiff may argue his FDCPA claim should have been equitably tolled – as opposed to relating back under Rule 15(c) – but equitable tolling does not apply in this case. As the United States Supreme Court has explained:

> Time requirements in lawsuits between private litigants are customarily subject to "equitable tolling," *Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989).
>
> . . .
>
> But an examination of the cases in which we have applied the equitable tolling doctrine as between private litigants affords petitioner little help. Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104, S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984).

*Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990). Here, Plaintiff cannot assert any of the situations where equitable tolling should apply. Plaintiff did not actively pursue her FDCPA claim by timely filing a defective pleading. Additionally, Defendant did not induce or trick Plaintiff into allowing the filing deadline to pass. Rather, this is a situation where Plaintiff failed to exercise her due diligence in preserving her legal rights, waiting more than four years after the POC was filed, and three years after the statute of limitations ran, to file her claim. Given these facts, there is no basis to equitably toll Plaintiff's FDCPA claim. *See id.*

**ii.      Plaintiff's adversary proceeding is not a claim for recoupment.**

When Plaintiff fails on her compulsory counterclaim argument, Defendant anticipates Plaintiff will then argue her AP is not barred by the one-year statute of limitations because it is a claim for recoupment. However, Plaintiff cannot succeed on a recoupment argument because

her FDCPA claim did not arise out of the same transaction or occurrence as the POC, her FDCPA claim was not brought defensively, and, if Plaintiff's factual allegations are true, the "main action" was not timely.

The Eleventh Circuit has explained that recoupment is:

> the right of a defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law imposes on him in the making or performance of that contract.

*In re Smith*, 737 F.2d 1549, 1552 n.7 (11th Cir. 1984). The United States Supreme Court has held "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Bull v. U.S.*, 295 U.S. 247, 262, 55 S.Ct. 695, 700-01, 79 L.Ed. 1421 (1935). Thus, in order to maintain a claim based on recoupment, Plaintiff must show: (1) the FDCPA violation and the POC arose from the same transaction; (2) she is asserting his FDCPA claim as a defense; and (3) the main action is timely. *See In re Smith*, 737 F.2d at 1553. "All three requirements must be satisfied." *Id.* Additionally, because recoupment is merely a defense to a claim, as opposed to a set-off or counterclaim in the traditional sense, it does not allow for recovery of damages above the claim it is being raised against. *Pennsylvania R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941). "It goes to the existence of plaintiff's claim, and is limited to the amount thereof." *Id.*

Plaintiff fails as to each of the three elements necessary to establish recoupment. First, as previously explained in relation to the compulsory counterclaim issue, the FDCPA violation and the POC did not arise from the same transaction. The POC is a request to the bankruptcy court to participate in the Estate's distribution. It arises from the existence of Plaintiff's debt. In contrast, Plaintiff's FDCPA claim arises from Defendant's allegedly improper attempts to collect

the debt by filing the POC. It would be impossible for the two to arise out of the same transaction because the FDCPA claim was created <u>by</u> the filing of the POC. It is axiomatic that the POC must have been predicated on some prior transaction; otherwise it would not have been filed. Because Plaintiff's FDCPA claim does not arise out of the same transaction as the POC, Plaintiff cannot satisfy the first requirement for establishing a claim for recoupment.

Second, Plaintiff is not asserting her FDCPA claim defensively. She is affirmatively seeking statutory and compensatory damages above that which was claimed in the POC. *See In re Sallings*, 357 B.R. 646, 650 (Bankr. N.D. Ala. 2007) ("Here, as in *Smith*, the Court finds that the debtor's claim is not 'directed at or an answer to the underlying debt.' . . . Instead, the debtor demands judgment against GMAC for statutory and compensatory damages."). Given that Plaintiff is seeking actually to recover damages, as opposed merely to reducing the amount owed to Defendant under the POC, her FDCPA claim cannot be characterized as recoupment. *See In re Johnson*, 2008 WL 5120114, *5 (Bankr. N.D. Ala. 2008) ("Recoupment raised as a defense cannot possibly result in monetary relief which, after a debtor retains his exempt share, might leave an excess for the trustee to distribute to creditors."). Moreover, no matter the type of FDCPA claim alleged, it can never be a defense to the validity of the underlying debt. One either owes the debt or not, regardless of any mean collection tactic. The FDCPA claim simply <u>cannot</u> be a defense.

Third, Plaintiff can never establish the third prong of a recoupment claim: that the 'main action' was timely. Recall, Plaintiff argues the POC constitutes the filing of a complaint. Accepting Plaintiff's factual assertion as true for purposes of this motion, then the POC is the 'main action.' The entirety of Plaintiff's FDCPA claim, however, is that the 'main action' (i.e., the POC) was filed outside the statute of limitations. In other words, it is not timely itself. If the

Case 14-03118   Doc 11   Filed 02/17/15   Entered 02/17/15 12:53:38   Desc Main
                    Document      Page 20 of 28

main action is not timely, then the claim in recoupment is irrelevant for there is no claim for it to be asserted against. Since the recoupment claim and the underlying suit must originate from the same operative facts, the statute of limitations will either save or doom both. If Plaintiff's FDCPA claim is for recoupment and it originated from the same facts as the POC, either the POC was timely (which means there was never an FDCPA violation to begin with) or the POC was untimely, meaning the recoupment claim is as well (which should not bother Plaintiff as recoupment can only be used as a defense to reduce an amount owed, and if the underlying suit is untimely, then nothing is owed). Logically and legally, Plaintiff's AP does not sound in recoupment.

### iii. The POC does not constitute a continuous violation of the FDCPA.

Defendant finally anticipates Plaintiff will argue the POC constitutes a continuous violation of the FDCPA because it is a continuous, ongoing, and unlawful demand for payment from the debtor. However, Plaintiff is incorrect. First, allowing the POC to remain pending does not constitute a continuing violation of the FDCPA that would toll the statute of limitations. Second, to the extent that subsequent to filing the POC Defendant merely accepted payment from Plaintiff in accordance with the court-approved bankruptcy plan, payments by Plaintiff (if they were improper) would merely evidence damages, not separate FDCPA violations.

### a. The POC is not a continuing demand for payment in violation of the FDCPA.

Plaintiff is expected to argue that, because the POC was not withdrawn, it constitutes a continuing demand for payment. However, this position is inconsistent with Plaintiff's position that the POC constitutes a complaint and inconsistent with the overwhelming relevant case law. "Although . . . there does not appear to be controlling Eleventh Circuit direction, numerous courts have rejected the contention that an action taken in an existing state court collection

proceeding is a 'new' violation or a continuing violation, for limitations purposes." *Farrell v. Patrick A. Carey, P.A.*, 2012 WL 6803654, *3 (M.D. Fla. 2012) (compiling cases reaching this conclusion); *see also, e.g., Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1310 (S.D. Fla. 2009) (explaining that "where statements concerning the status of a debt are new communications concerning an old claim, the statements do not start a fresh statute of limitations."); *Nutter v. Messerli & Kramer, P.A.*, 500 F.Supp.2d 1219 (D.Minn. 2007) (same); *Perez v. Bureaus Investment Group No. II, LLC*, 2009 WL 1973476 (S.D. Fla. 2009) (in case where FDCPA lawsuit was filed more than one-year after time-barred collection lawsuit was filed, but within one-year of subpoena in collection lawsuit being issued, holding that FDCPA statute of limitation began to run at time of service of complaint and, therefore, FDCPA claim was barred by one-year statute of limitations); *Crossman v. Asset Acceptance LLC*, 2014 WL 2612031 (M.D. Fla. 2014) (in case where plaintiff brought FDCPA claim based on defendant's failure to file a satisfaction of judgment within the time required by law, holding that statute of limitation began to run on date of initial violation and additional days during which defendant failed to correct error did not constitute a continuing violation); *Calka v. Kucker, Kraus & Bruh, LLP*, 1998 WL 437151, *3 (S.D.N.Y. 1998) (continued prosecution of collection suit, including filing amended complaint and summary judgment motion, did not constitute continuing violation and all such "claims" accrued on date suit was filed); *Deutsche Bank v. Lichtenfels*, 2009 WL 2230937, *25 (Conn. Sup. Ct. 2009) (holding that the course of litigation is not, in itself, a continuing violation of the FDCPA, in case where plaintiff alleged filing of collection lawsuit violated FDCPA). "The course of litigation is not, in itself, a 'continuing violation' of the FDCPA. . . . For conduct during litigation to be actionable, a plaintiff must allege, and on summary judgment offer proof, that the conduct is a violation of the FDCPA independent of the

act of filing suit." *Schaffhauser v. Burton Neil & Associates*, 2008 WL 857523, *2-3 (M.D. Penn. 2008).

This extensive body of case law – which does not include all the cases cited within those cases; we omitted them for space consideration – is in line with the Eleventh Circuit's general principles regarding when the FDCPA's statute of limitations should begin to run.  In *Maloy v. Phillips*, the Eleventh Circuit held that the FDCPA's statute of limitations began to run on the date a letter was mailed, as opposed to the date the letter was received.  64 F.3d 607, 608 (11th Cir. 1995).  The Eleventh Circuit reasoned that the statute of limitations began to run on the date the letter was mailed "because that was the debt collector's last opportunity to comply with the FDCPA" and "using the date of mailing was a better and more practical approach because it provided a date that was easy to determine, ascertainable by both parties, and easily applied."  *Id.* Just like with mailing the letter, the filing of a complaint that gives rise to a FDCPA claim is the last opportunity to comply with the FDCPA.

Additionally, in *Center for Biological Diversity v. Hamilton*, the Eleventh Circuit was presented with a situation in which the defendant failed to timely designate a critical habitat as required under the Endangered Species Act, and the plaintiff brought suit.  435 F.3d 1331, 1333 (11th Cir. 2006).  The defendant moved to dismiss the case as time-barred, and the plaintiff argued each day the defendant failed to comply with the statute (i.e., failed to designate a critical habitat) constituted a continuing violation, thereby tolling the statute of limitations.  *Id.* at 1334-35.  The Eleventh Circuit explained that in assessing whether actions constitute continuing violations, "this Circuit distinguishes between the present consequence of a one-time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does."  *Id.* at 1335.  Applying this test, the Eleventh Circuit held that the

continuing violation doctrine did not apply because there was a one-time failure to make the required designation and any detrimental effects complained of by the plaintiff merely constituted consequences of that one-time violation. *Id.* While *Hamilton* does not deal with the FDCPA, its analysis and holding has been applied in such cases. *See Crossman*, 2014 WL 2612031 at *3-4.

Given the overwhelming case law holding that actions taken in the course of a lawsuit do not constitute continuous violations of the FDCPA separate from the filing of the lawsuit, it is clear that Plaintiff's continuous violation argument fails. If the POC violated the FDCPA, once it was filed Defendant had no further chance to comply with the FDCPA. Even if withdrawn five minutes later, the alleged violation already occurred and could not be cured by withdrawal. It was a one-time act, not repeated, that has still not been deemed to violate the FDCPA. The statute of limitations began to run when the POC was filed, and no other actions took place that would toll it.

Plaintiff will allege the POC constitutes a complaint, as is necessary for his counterclaim argument. Accepting Plaintiff's allegation as true for purposes of this Rule 12(b)(6) motion, because the POC is a complaint and actions taken in furtherance of a legal proceeding do not constitute continuing violations, Defendant's failure to withdraw the proof of claim does not constitute a continuing violation. Rather, the situation is akin to that addressed in *Hamilton*. Defendant's continued participation in the bankruptcy, and any payments by Plaintiff to Defendant, are merely consequences of Defendant's one-time alleged violation of the FDCPA (i.e., filing the POC on a time-barred debt), not separate violations themselves. *See Hamilton*, 435 F.3d at 1335.

        **b.**    **Plaintiff's payments to Defendants in accordance with the bankruptcy plan do not constitute separate FDCPA violations.**

Defendant predicts that Plaintiff will argue Defendant continued to accept distributions from the Estate and each payment constitutes a new violation of the FDCPA. Defendant's acceptance of payments from Plaintiff in accordance with the court-approved bankruptcy plan cannot constitute separate FDCPA violations. Defendant has been unable to find any courts that have addressed the specific issue of whether payments made as a result of allegedly prohibited collection activity can constitute FDCPA violations separate from the collection activity itself. However, cases addressing the nature of such payments are instructive on this issue. In *Abby v. Paige*, the plaintiff sued the defendants in part for FDCPA violations arising from unlawful collection activities. 2013 WL 141145, *1 (S.D. Fla. 2013). As a result of the defendants' collection activities, plaintiff made payments on the alleged debt. *Id.* at *2. After deciding the defendants had violated the FDCPA, the court was presented with the issue of what constituted actual damages under the FDCPA. The court explained:

> Moreover, because the FDCPA permits a plaintiff to recover for violations of the law even when he defaulted on a debt, it follows that debtors may recover the amount paid to settle a debt if the debt collector violated the FDCPA in connection with collecting that debt.
>
> Here, Plaintiff seeks to recover two payments she made to settle a disputed debt: one for $400, the other for $1,095. Regardless of whether Plaintiff owed these amounts, Defendant Paige violated the FDCPA in connection with both of these collections. Thus, the Court finds that Plaintiff is entitled to recover $1,495 in **actual damages**.

*Id.* at *9 (quotation omitted) (emphasis added). Like Abby, any payment Plaintiff made might be recoverable as damages (though Defendant does not concede this point, either), but under no construction would the payments themselves be 'new' FDCPA violations.

Other courts have held similarly to *Abby*. In *Alonso v. Blackstone Financial Group, LLC*, the parties disputed whether $100 collected as a result of prohibited collection activities

constituted actual damages. 962 F.Supp.2d 1188, 1197-98 (E.D. Cal. 2013) (citing *Abby*). The court found it did. *Id.* Likewise, in *Hamid v. Stock & Grimes, LLP*, the plaintiff brought a FDCPA claim against the defendant for bringing a time-barred collection action that resulted in plaintiff making a payment to settle that action. 876 F.Supp.2d 500, 501-02 (E.D. Penn 2012). The court held that the plaintiff's payments to settle the debt were made because of the time-barred collection action and that the payment was a "proper element of actual damages" for that FDCPA violation. *Id.* at 503.

While there appear to be no cases directly on point, the cases detailed above show that payments made by a plaintiff as a result of prohibited collection activities are not separate FDCPA violations. Rather, such payments merely go to actual damages arising out of the prohibited conduct. It would be incongruous to find, without any additional actions on the part of a defendant that could arguably violate the FDCPA, the payments themselves could constitute both actual damages for a prior FDCPA violation <u>and</u> the basis for a separate new FDCPA violation.

It would be illogical to hold otherwise. If defendants can be found to have violated the FDCPA based on when a plaintiff makes a payment, the one-year statute of limitations would have no effect. For example, assume a plaintiff receives a dunning letter on January 1, 2005, that does not contain the legally required disclosures. The plaintiff reads it, disregards it, and puts in away in a drawer. Two years later he finds the same letter, realizes the disclosures are absent, and sends in a dollar as payment. He then files an FDCPA claim based on the omitted disclosures and argues his payment is the event that starts the statue running. If he were right, his claim would not be barred by the one-year statute of limitations, despite the Eleventh

Circuit's holding in *Maloy* that the statute of limitations was to start running on the date the letter was placed in the mail.

Under this scenario, the congressionally provided one-year statute of limitations would lose all meaning. Courts are not supposed to issue holdings that would defeat the purpose of statutes. *See U.S. v. Tohono O'Odham Nation*, 131 S.Ct. 1723, 1730, 179 L.Ed.2d 723 (2011) ("Still, the Court of Appeals was wrong to allow its precedent to suppress the statute's aims. Courts should not render statutes nugatory through construction."). Accordingly, any payments by the Estate, all of which were made in compliance with a judicially approved settlement, do not constitute separate FDCPA violations. Because the payments are not separate violations, the one-year statute of limitations began to run the date the POC was filed, and Plaintiff's AP – filed more than four years later – is barred by the applicable statute of limitations.

WHEREFORE, PREMISES CONSIDERED, for the reasons explained in this Memorandum Brief, Defendant respectfully requests this Honorable Court dismiss Plaintiff Aurelia Williams' Adversary Proceeding based on an alleged Fair Debt Collection Practices Act ("FDCPA") violation, as it is barred by the applicable statute of limitations.

Respectfully submitted,

/s/ Neal D. Moore, III
Neal D. Moore
Stephen Kahn
COUNSEL FOR DEFENDANT
Resurgent Capital Services, LP

OF COUNSEL:
Ferguson, Frost, Moore & Young, LLP
1400 Urban Center Drive, Suite 200
Birmingham, AL 35242
Telephone: (205) 879-8722
Facsimile: (205) 879-8831
Email: ndm@ffmylaw.com
Email: sak@ffmylaw.com

## <u>CERTIFICATE OF SERVICE</u>

  This is to certify that on this the 17th day of February, 2015, a copy of the foregoing document has been served upon counsel for all parties to this proceeding via electronic filing:

Richard D. Shinbaum
Shinbaum & Campbell, P.C.
566 South Perry Street
P.O. Box 201
Montgomery, Alabama  36101
*Counsel for Plaintiff*

          /s/ Neal D. Moore, III
          OF COUNSEL